IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

**United States of America,**

      **Plaintiff,**

v.                                                   Case No. 05-20086-01-JWL

**Adam Taff,**

      **Defendant.**

## MEMORANDUM & ORDER

On October 12, 2005, Adam Taff was charged in a two-count superseding indictment with wire fraud in violation of 18 U.S.C. §§ 2 and 1343 (Count 1) and converting to his personal use campaign contributions and donations in violation of the Federal Election Campaign Act, 2 U.S.C. § 439a(b) (Count 2). Mr. Taff now moves to dismiss Count 2 of the superseding indictment on the grounds that, as a matter of law, the government is incapable of proving its case beyond a reasonable doubt based on the alleged and undisputed facts. On October 20, 2005, the court held oral argument on the motion and retained the motion under advisement. For the reasons explained below, the court now denies the motion.[1]

An indictment is deemed constitutionally sufficient if it contains the essential elements of the offense intended to be charged; sufficiently apprises the accused of what he must be

---

[1] Mr. Taff initially moved to dismiss Count 2 of the original indictment and has renewed his motion, incorporating arguments from his initial motion, in response to the superseding indictment. Thus, while the initial motion is moot by virtue of the filing of the superseding indictment, the court still looks to that motion to the extent Mr. Taff has incorporated the arguments made therein into his renewed motion.

prepared to defend against; and enables the accused to plead an acquittal or conviction under the indictment as a bar to any subsequent prosecution for the same offense. *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994) (citations omitted). Generally, the strength or weakness of the government's case, or the sufficiency of the government's evidence to support a charge, may not be challenged by a pretrial motion. *Id*. (citation omitted). An indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true. *Id*. (citation omitted). Courts should refrain from considering evidence outside the indictment when testing its legal sufficiency. *Id*.

Notwithstanding these general principles, the Tenth Circuit has upheld pretrial dismissals under Rule 12(b) of the Federal Rules of Criminal Procedure based on the insufficiency of the evidence under the limited circumstances where the operative facts are undisputed and the government fails to object to the district court's consideration of those undisputed facts in making the determination regarding a submissible case. *Id.* at 1088. Under this scenario, a pretrial dismissal is essentially a determination that, as a matter of law, the government is incapable of proving its case beyond a reasonable doubt. As the Tenth Circuit has cautioned, however, such a scenario "is indeed the rare exception." *Id*.

The parties do not dispute the allegations contained in the superseding indictment nor do they dispute Mr. Taff's evidence supplementing those allegations. Adam Taff is an employee of Myers National Mortgage Company, Inc. d/b/a National Mortgage Company, Inc. and Mr. Taff's co-defendant, John Myers, is the founder and chairman of National Mortgage Company, Inc. At the time pertinent to the charges in the superseding indictment, Mr. Taff was a candidate for

nomination and election to the United States House of Representatives. Mr. Taff's campaign committee maintained two accounts at Metcalf Bank for campaign contributions and donations.

In November 2003, Mr. Taff agreed to purchase a home from Mr. Myers and Mr. Myers' spouse. On December 15, 2003, Mr. Taff, Mr. Myers and Mr. Myers' spouse signed a contract pursuant to which Mr. Taff agreed to purchase the house for $1.2 million. On January 19, 2004, Mr. Taff met with an agent of NovaStar Home Mortgage, Inc. and signed a loan application form. On February 10, 2004, Mr. Taff withdrew funds from his two campaign accounts at Metcalf Bank and obtained a $300,000 bank check payable to John Myers and Mr. Myers' spouse. The bank check was obtained at 3:41 p.m. on February 10, 2004.

Mssrs. Taff and Myers then met with a closing agent at a title company in Overland Park, Kansas and represented that the $300,000 check was a down payment from Mr. Taff to Mr. Myers and Mr. Myers' spouse. That representation was false in that Mssrs. Taff and Myers did not intend for Mr. Taff to make that payment to Mr. Myers or Mr. Myers' spouse. Mr. Taff, Mr. Myers and the closing agent then created documents that falsely showed that Mr. Taff had made the $300,000 down payment and transmitted those documents to NovaStar, which then funded the remaining $900,000 of the purchase price. After meeting with the closing agent, Mr. Taff, with the knowledge and consent of Mr. Myers, took the $300,000 check back to Metcalf Bank where the funds were redeposited into Mr. Taff's campaign accounts at 4:27 p.m.

Based on the foregoing, the superseding indictment charges Mr. Taff with converting to his personal use campaign contributions and donations in violation of the Federal Election Campaign Act, 2 U.S.C. § 439a(b). Subsection (b)(1) of 2 U.S.C. § 439a states that "a contribution or

donation described in subsection (a) of this section shall not be converted by any person to personal use."[2]  Subsection (b)(2) then describes the meaning of the phrase "converted to personal use" for purposes of subsection (b)(1):

> [A] contribution or donation shall be considered to be converted to personal use if the contribution or donation is used to fulfill any commitment, obligation, or expense of a person that would exist irrespective of the candidate's election campaign or individual's duties as a holder of Federal office, including–
>
> > (A)  a home mortgage, rent, or utility payment;
> >
> > (B)  a clothing purchase;
> >
> > (C)  a noncampaign-related automobile expense;
> >
> > (D)  a country club membership;
> >
> > (E)  a vacation or other noncampaign-related trip;
> >
> > (F)  a household food item;
> >
> > (G)  a tuition payment;
> >
> > (H)  admission to a sporting event, concert, theater, or other form of entertainment not associated with an election campaign; and
> >
> > (I)  dues, fees, and other payments to a health club or recreational facility.

2 U.S.C. § 439a(b)(2).  In support of his motion to dismiss, Mr. Taff asserts that the allegations of the superseding indictment fail to demonstrate that Mr. Taff used campaign funds "to fulfill a

---

[2]Subsection (a) describes a contribution or donation as any contribution or donation accepted by a candidate or received by an individual "as support for activities of the individual as a holder of Federal office."

4

commitment or obligation" within the meaning of section 439a(b)(2). According to Mr. Taff, the superseding indictment fails as a matter of law because it is undisputed that he never, in fact, used the funds to make a payment toward the purchase of his personal residence; at the most, he used the funds to represent that he had made a payment toward the purchase of his personal residence. In sum, Mr. Taff urges that section 439a(b) requires the actual expenditure of campaign funds for personal use and, thus, the government cannot prove its case because it is undisputed that Mr. Myers never negotiated the $300,000 check.

While it may be true that Mr. Taff did not use campaign funds to fulfill his commitment to provide a down payment to Mr. Myers, Mr. Taff's characterization of the government's theory of their case is simply too narrow and focuses solely on Mr. Myers as the seller. In fact, a jury could conclude that NovaStar, prior to advancing Mr. Taff a loan in the amount of $900,000, required Mr. Taff to show at closing that he had some percentage of the purchase price (in this case, 25 percent) readily available as a down payment. By presenting an official bank check in the amount of $300,000, Mr. Taff was able to convince NovaStar to proceed with the loan and Mssrs. Taff and Myers were able to close the deal. Stated another way, the jury could conclude that Mr. Taff would not have been able to close the loan without the use of his campaign funds. The government, then, has alleged facts which would support a violation of the Federal Election Campaign Act–namely, that Mr. Taff converted[3] campaign funds to fulfill his obligation to provide proof to NovaStar that

---

[3] Analyzing analogous language in another statute, the Tenth Circuit has explained that one who wrongfully exercises dominion over property against the rights of the true owner commits conversion. *See United States v. Hill*, 835 F.2d 759, 764 (10th Cir. 1987) (explaining "converts to his use" language of 18 U.S.C. § 641). By obtaining an official bank

5

he had the requisite funds available to make a down payment on the purchase price so that NovaStar, in turn, would advance the loan. In such circumstances, the court cannot conclude as a matter of law that the government is incapable of proving its case beyond a reasonable doubt and dismissal under *Hall* is inappropriate. Mr. Taff's motion is denied.

**IT IS THEREFORE ORDERED BY THE COURT** that Mr. Taff's motion to dismiss (doc. 10) and his renewed motion to dismiss (doc. 22) are denied.

**IT IS SO ORDERED** this 16th day of November, 2005.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

---

check, Mr. Taff actually withdrew the funds from his campaign accounts and exercised dominion over those funds against the rights of his campaign committee. Thus, the fact that Mr. Taff fully intended to return the funds (and did so less than one hour after withdrawing the funds) is not inconsistent with the statutory requirement of conversion. *See also United States v. Fogel*, 901 F.2d 23, 25 (4th Cir. 1990) (conversion under section 641 does not require that the accused actually keep the property for personal use; conversion includes intentional and knowing abuses or unauthorized uses of property).

6